IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

DANIELLE JOHNSON,

        Plaintiff,

  v.

STATE OF OREGON, by and through
the STATE OF OREGON DEPARTMENT
OF ENVIRONMENTAL QUALITY, et al.,

        Defendants.

Case No. 3:24-cv-00279-JR

OPINION AND ORDER

**BAGGIO, District Judge:**

### I. INTRODUCTION

Plaintiff Danielle Johnson challenges Defendant State of Oregon Department of Environmental Quality's ("the Department" or "DEQ") Diversity, Equity, and Inclusion ("DEI") policies as racially discriminatory and illegal. Plaintiff claims that DEQ and individual Defendants Richard Whitman, Leah Feldon, and Penny Robertson (collectively, "Defendants") violated state and federal law by creating a hostile work environment when they promulgated and imposed racially discriminatory material on the workplace and retaliating against her for opposing the alleged discrimination. She seeks declaratory and injunctive relief along with monetary damages.

On August 13, 2024, the Magistrate Judge issued her Findings and Recommendation ("F&R", ECF 31), which recommends denying Defendants' Partial Motion to Dismiss as to their

1 – OPINION AND ORDER

alternative motion under ORS 30.265 to substitute the DEQ for the individual Defendants named in several of Plaintiff's claims for relief and granting it in all other respects. Plaintiff objected on September 17, 2024, ("Objs.", ECF 36), and Defendants responded on October 1, 2024, ("Resp. to Objs.", ECF 39). As set forth below, the Court adopts the recommendation in part, modifies it in part, and rejects it in part. *See* 28 U.S.C § 636(b)(1)(C).

## II. BACKGROUND

### A. FACTUAL BACKGROUND

Because the parties are familiar with the facts of this case, the Court recites them only as necessary to understand its decision. Plaintiff started employment with DEQ in 2018 with a goal to advance in her career. Complaint ("Compl.", ECF 1), ¶¶ 22, 30. At first, she succeeded—her supervisors "groomed her for promotion," and promoted her to Lead Worker for her team. *Id.* at ¶¶ 31–32. She alleges, however, that her upward career trajectory came to a halt after DEQ increased its DEI efforts. *Id.* ¶ 34.

DEQ historically made efforts to hire and promote a diverse workforce, but those efforts became more intense in the summer of 2020. *See id.* ¶¶ 36–38, 40. Under policies adopted by Defendants Whitman and Feldon, who each served as Director of DEQ during the relevant time, and approved by the Environmental Quality Commission[1], DEQ rejected policies of equal employment because policies providing equal opportunities regardless of race or other immutable characteristics would not create a workforce that includes suitable numbers of women, minorities, and people with disabilities across job classifications. *Id.* at ¶¶ 35, 37 (citing Compl., Ex. 4, ECF [1-4]). DEQ segregated employees based on race by giving non-white employees one paid hour a

---

[1] Under ORS 468.010, DEQ is managed under the authority of the Environmental Quality Commission, whose members are appointed by the Governor. Compl., ¶ 35.

2 – OPINION AND ORDER

week to enter "safe spaces" that were only available for non-white employees. *Id.* at ¶ 42. DEQ engaged with an outside DEI firm called Engage to Change and instructed employees to prioritize the views of non-white employees during meetings. *Id.* at ¶¶ 44, 51. DEQ leadership clarified that this instruction was "serious, and not to be taken lightly." *Id.* at ¶ 52. DEQ assigned reading materials that ascribed negative, stereotypical characteristics and attributes to whiteness and endorsed the statement "'witness is a death sentence.'" *Id.* at ¶¶ 60, 61 (citing Compl., Ex. 7, ECF [1-7]). In June and July 2023, DEQ distributed an Organizational Assessment that it required all employees to read that included negative statements based on race, specifically negative statements about "whiteness" or "white folks" that DEQ leadership adopted as the official view and policy of DEQ. *Id.* at ¶¶ 62–68.

According to Plaintiff, the negative statements about race "severely affected the workplace for individuals like [her]." *Id.* at ¶ 70. Assigned reading materials "stat[ed] offensive racialized opinions as if they were settled fact." *Id.* at ¶ 59. And mandatory trainings that "aggressively promoted" anti-white concepts caused Plaintiff significant mental and personal stress. *See id.* at ¶¶ 70–74, 84–88, 92–93.

During a video teleconference meeting attended by approximately 150 employees, including high-level managers, Plaintiff spoke up to oppose what she believed to be DEQ's illegal conduct. *Id.* at ¶¶ 97–107. Specifically, she asked whether DEQ's different treatment of people in employment decisions based on race or other protected class status was legal and asked if the anti-racism work that DEQ and Engage to Change promoted "required ignoring some laws." *Id.* at ¶ 107. Engage to Change's facilitator responded that the laws were "not just" and accused Plaintiff of exhibiting "resistance." *Id.* at ¶¶ 112, 114. The facilitator subsequently personally attacked Plaintiff, claimed that Plaintiff's comments caused trauma to non-white participants in the

3 – OPINION AND ORDER

meeting, created race-segregated breakout rooms for further discussion, and laughed at the idea that white employees might feel excluded by being forbidden to join the breakout rooms. *Id.* at ¶¶ 114–15. Defendant Robertson, DEQ's Human Resources Manager, stated during the meeting, among other things, that Plaintiff's discussion of the legality of DEQ's anti-racism initiatives caused harm, especially to the human resources team. *Id.* at ¶ 117.

Several days after the meeting, in an email to all DEQ employees, Defendant Feldon referred to Plaintiff's question during the meeting as: an incident that showed a "continuing racis[t] culture within the organization", "aggressive resistance", and "a racist . . . diatribe." *Id.* at ¶ 125. Within days of Defendant Feldon's email, Defendant Robertson: demoted Plaintiff, taking away her Lead Worker position; cut Plaintiff's pay by five percent; and initiated an investigation into whether Plaintiff caused harm with her comments at the meeting. *Id.* at ¶¶ 127–29.

According to Plaintiff, some of her co-workers have noticeably changed how they interact with her, others know that she was "targeted by the highest level of DEQ management", and some believe that she is a racist. *Id.* at ¶ 150. Defendants' actions harmed Plaintiff's professional network as well as her professional reputation and career advancement opportunities. *Id.* at ¶¶ 151–52.

### B. PROCEDURAL BACKGROUND

Plaintiff brought this action against Defendants alleging hostile work environment and retaliation in violation of state and federal law. Compl., ¶¶ 163–237. She seeks a declaratory and injunctive relief along with compensatory and punitive damages. *Id.* at ¶¶ A–M.

Defendants filed a partial motion to dismiss under Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 12(b)(6) seeking to dismiss: (1) Defendants Feldon and Robertson from the Second Claim for Relief, (2) the claims brought against DEQ and individual Defendants in their official capacities in the Fourth, Fifth, and Eighth Claims for Relief, and (3) the hostile work environment

claims in Plaintiff's Sixth and Seventh Claims for Relief for failure to state a claim. ("Mot. to Dismiss", ECF 19), 2. The motion also moved to strike Plaintiff's request for injunctive relief and pre-judgment interest. *Id.* at 2, 9–11. In the alternative, under ORS 30.265, Defendants sought to substitute DEQ for the individual Defendants in the Third, Fourth, Fifth, and Eighth Claims for relief to the extent that these claims remained viable. *Id.* at 2.

In her Response to Defendants' Partial Motion to Dismiss, Plaintiff offered no objection to dismissing Defendants Feldon and Robertson from her Second Claim for Relief and conceded that the Eleventh Amendment bars her Fourth, Fifth, and Eighth Claims for Relief against DEQ and the individual Defendants in their *official* capacities. (Resp. in Opp'n to Mot. to Dismiss "Opp'n.", ECF 27) 30, 31 n.8).

The Magistrate Judge recommends denying Defendants' Partial Motion to Dismiss as to their alternative request under ORS 30.265 but granting it in all other respects. F&R, 24. Plaintiff objects to the portions of the F&R that recommend dismissal of her Sixth and Seventh Claims for Relief alleging race-based hostile work environment discrimination in violation of federal law and that include "gratuitous assertions". Objs., 2, 3, 26–30. Defendants urge adoption of the F&R in full. Resp. to Objs., 7.

### III. LEGAL STANDARDS

The magistrate judge makes only recommendations to the court, to which any party may file written objections. 28 U.S.C. § 636(b)(1)(C). If a party objects, the court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendation to which objection is made." *Id.* The court is not, however, required to review, de novo or under any other standard, the factual or legal conclusions of the magistrate judge as to those portions of the F&R to which no objections are addressed. *Thomas v. Arn*, 474 U.S. 140, 149

(1985); *United States v. Ramos*, 65 F.4th 427, 433 (9th Cir. 2023). While the level of scrutiny that the court applies to its F&R review depends on whether a party has filed objections, the court is free to accept, reject, or modify any part of the F&R. 28 U.S.C. § 636(b)(1)(C); *see also Thomas*, 474 U.S. at 154.

When reviewing a motion to dismiss, a court accepts all the complaint's well-pleaded factual allegations as true and construes the pleadings in a light most favorable to the plaintiff. *Floyd v. Am. Honda Motor Co., Inc.*, 966 F.3d 1027, 1035 (9th Cir. 2020); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A district court need not assume the truth of pleadings that are "'no more than conclusions.'" *Moss v. United States Secret Serv.*, 572 F.3d 962, 970 (9th Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678). Or stated another way, an allegation must be more than a legal conclusion cast as a factual allegation. *Id.* at 969.

## IV. DISCUSSION

The Court ADOPTS the recommendation to: (1) deny Defendants' alternative request under ORS 30.265 to substitute the State for the individual defendants named in Plaintiff's state law claims, (2) dismiss Defendants Feldon and Robertson from Plaintiff's Second Claim for Relief, (3) dismiss the DEQ and the official capacity claims against the individual defendants from Plaintiff's Fourth, Fifth, and Eighth Claims for Relief, and (4) strike Plaintiff's request for pre-judgment interest.[2]

The Court MODIFIES the recommendation to strike Plaintiff's requests for injunctive relief because it is speculative or pertains to past events to allow Plaintiff to amend the Complaint to allege ongoing conduct sufficient to support claims for injunctive relief against the DEQ and

---

[2] Plaintiff acknowledged that her prayer for relief seeks pre-judgment interest only as authorized by law, and it is not authorized by law in these circumstances. F&R, 15–16 (citing Opp'n., 33 n.9).

individual Defendants Feldon and Robertson.[3] Defendants may not include requests for injunctive relief as to Defendant Whitman in any amended pleading because he is the former director of DEQ and any claims against him necessarily concern only past conduct. *See Cerrato v. S.F. Cmty. Coll. Dist.*, 26 F.3d 968, 973 (9th Cir. 1994) (the Eleventh Amendment does not bar prospective injunctive relief against state officers acting outside the bounds of their authority); *Bonin v. Calderon*, 59 F.3d 815, 845 (9th Cir. 1995) (amendment is futile if no set of facts can be proven that would constitute a valid claim).

The Court REJECTS the recommendation to dismiss Plaintiff's Sixth and Seventh causes of action alleging hostile work environment discrimination under Title VII and 42 U.S.C §§ 1981 and 1983.[4]

An employer is liable under federal law for harassment that is "sufficiently severe or pervasive to alter the conditions of [the plaintiff's] employment and create an abuse working environment." *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 67 (1986) (Title VII); *see also Manatt v. Bank of Am. NA*, 339 F.3d 792, 797 (9th Cir. 2003) (a plaintiff must meet the same standards to prove both a 42 U.S.C § 1981 and a Title VII claim). "The working environment must both subjectively and objectively be perceived as abusive." *Fuller v. City of Oakland*, 47 F.3d 1522, 1527 (9th Cir. 1995). To state a plausible hostile work environment claim, Plaintiff must show: "(1) that [she] was subjected to verbal or physical conduct of a racial ... nature; (2) that the conduct was unwelcome; and (3) that the conduct was sufficiently severe or pervasive to alter the

---

[3] Plaintiff did not address this recommendation in her Objections, but in her opposition to Defendants' motion, she asserted that the practices that she alleges in her Complaint "continue[ ] to this day" and she requested leave to amend to correct any deficiencies in her pleading. Opp'n., 32–33.

[4] A plaintiff seeking to enforce rights secured by 42 U.S.C § 1981 against a state actor must bring a cause of action under 42 U.S.C § 1983. *Yoshikawa v. Seruirant*, 74 F.4th 1042, 1047 (9th Cir. 2023).

7 – OPINION AND ORDER

conditions of the plaintiff's employment and create an abusive work environment." *Reynaga v. Roseburg Forest Prods.*, 847 F.3d 678, 686 (9th Cir. 2017) (quoting *Vasquez v. City of Los Angeles*, 349 F.3d 634, 642 (9th Cir. 2003)) (alterations added). Defendants argue that Plaintiff did not allege specific instances of verbal abuse, name-calling, or any other abuse and that she complains "solely about her disagreement with DEI materials provided in the workplace." Mot. to Dismiss, 8. Plaintiff counters that she has made specific allegations about DEQ's messaging and trainings, which Plaintiff was obligated to attend, that ascribed negative traits to white people without exception and as flowing from race. Opp'n., 20, 25–26 (listing the Compl.'s allegations of co-workers' hostile comments based on race). She also points to specific allegations about racially hostile communications from co-workers and supervisors and to the Department's race-based hiring and promotion decisions and racially segregated programs and workspaces, which resulted from DEQ supervisors and co-workers taking DEQ's anti-racist messaging to heart. *Id.* at 25–27.

      Construing the facts in the light most favorable to Plaintiff, the Court finds that her allegations, at least on a motion to dismiss, plausibly state a claim for hostile-work environment based on race. Plaintiff's specific allegations include comments from co-workers that white employee's accomplishments result from "unearned privilege", "white voices are not worth listening to", and "discrimination against white people is legitimate." Opp'n., 25–26 (quoting Compl.). Plaintiff makes specific allegations about mandatory trainings that ascribed negative characteristics to white people, and claims that the trainings and harassing comments went on over a period of years, such that ascribing negative characteristics to white people became commonplace at DEQ. *See e.g.*, Compl., ¶¶ 77–91. Accordingly, the Court finds that Plaintiff has pleaded sufficient allegations that establish repeated, race-based harassment that was pervasive

8 – OPINION AND ORDER

enough to affect her ability to do her job. *See Reynaga*, 847 F.3d at 686–87. Determination of whether Plaintiff's race-based, hostile-work environment claims have merit is for another day, but at this stage of the litigation, the Court finds that she has met her burden of showing that her claims are plausible.

## V. CONCLUSION

For the reasons set forth above, the Court ADOPTS in part, MODIFIES in part, and REJECTS in part Judge Russo's F&R. (ECF 31).

Defendants' partial motion to dismiss (ECF 19) is GRANTED as follows: (1) Defendants Feldon and Robertson are dismissed from Plaintiff's Second Claim for Relief, (2) the claims against DEQ and individual Defendants in their official capacity are dismissed from Plaintiff's Fourth, Fifth, and Eighth Claims for Relief, (3) Plaintiff's claims for injunctive relief and prejudgment interest are stricken from her Complaint.

Defendants' partial motion to dismiss (ECF 19) is DENIED with respect to Plaintiff's Sixth and Seventh Causes of action.

Plaintiff is granted leave to amend her pleadings to allege viable injunctive relief claims against all defendants except Defendant Whitman. Any amended pleading must be filed within 14 days from the date that this order is filed and must not include any of the claims against Defendants dismissed in this Opinion and Order. If Plaintiff files an amended pleading, Defendants shall respond within the time set out in Federal Rule of Civil Procedure 15(a)(3). If no amended pleading is filed, the parties are ordered to, within fourteen days after the deadline for filing an amended pleading, file a Federal Rule of Civil Procedure 26(f) report that includes: (1) an estimate of the number of days needed for trial and (2) jointly proposed dates for the pretrial conference and for

trial. The Rule 26(f) report should also include days and times within January or February 2025 that the parties are available for a Rule 16 conference.

        IT IS SO ORDERED.

        DATED this __9th__ day of December, 2024.

*Amy M. Baggio*
AMY M. BAGGIO
United States District Judge

10 – OPINION AND ORDER